**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| MARY PHILIPS, <br><br> Plaintiff, <br><br> v. <br><br> XOS, INC., DAKOTA SEMLER, GEORGE N. MATTSON, STUART BERNSTEIN, ALICE K. JACKSON, BURT JORDAN, ED RAPP, and GIORDANO SORDONI, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Mary Philips ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Xos, Inc. ("Xos" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Company's proposed acquisition of ElectraMeccanica Vehicles Corp. ("ElectraMeccanica").[1]

2. On January 11, 2024, Xos entered into an Arrangement Agreement (the "Arrangement Agreement") with ElectraMeccanica. The Arrangement Agreement provides

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

that Xos will acquire all the issued and outstanding shares of ElectraMeccanica common stock in exchange for approximately 0.0142 of an Xos share for each ElectraMeccanica share, assuming the net cash of ElectraMeccanica at closing is greater than $46,500,000 and less than $50,500,000.[2]

3.    The Company's corporate directors subsequently authorized the February 13, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.    It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the

---

[2] The Arrangement Agreement requires Xos to issue additional shares of its common stock (the "Share Issuance").  As a Nasdaq listed company, Xos is required by Nasdaq listing rules to secure shareholder approval before issuing twenty percent or more of its outstanding common stock.  Thus, the Proposed Transaction is contingent upon Xos shareholders voting to approve the proposed Share Issuance.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for March 20, 2024.

defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and is and has been at all times relevant hereto, the owner of XOS common stock.

10. Defendant Xos is a Delaware corporation with its principal executive offices located at 3550 Tyburn Street, Los Angeles, California 90065. Xos' shares trade on the Nasdaq Capital Market under the ticker symbol "XOS." Xos is a leading manufacturer of fully electric, zero-emission medium- and heavy-duty commercial vehicles, powertrain components, and charging infrastructure. Xos' mission is to decarbonize commercial transportation and facilitate a seamless transition for fleet owners from traditional internal combustion engines to fully electric vehicles. The Company's proprietary battery system, the X-Pack, and modular chassis, the X-Platform, are purpose-built for medium- and heavy-duty commercial vehicles in the last-

mile sector. Xos' fleet-as-a-service offering provides customers with a comprehensive suite of products and services, such as vehicle maintenance and purchase financing, to help fleets more easily make the transition from diesel to electric.

11. Defendant Dakota Semler is a Co-Founder of the Company and is and has been Chief Executive Officer, Chairman of the Board, and a director of the Company at all times relevant hereto.

12. Defendant George N. Mattson is and has been Lead Independent Director of the Company at all times relevant hereto.

13. Defendant Stuart Bernstein is and has been a director of the Company at all times relevant hereto.

14. Defendant Alice K. Jackson is and has been a director of the Company at all times relevant hereto.

15. Defendant Burt Jordan is and has been a director of the Company at all times relevant hereto.

16. Defendant Ed Rapp is and has been a director of the Company at all times relevant hereto.

17. Defendant Giordano Sordoni is a Co-Founder of the Company and has been Chief Operating Officer and a director of the Company at all times relevant hereto.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On January 17, 2024, ElectraMeccanica and the Company jointly announced in relevant part:

> HARRISBURG, LOS ANGELES, CA and MESA, AZ -- January 11, 2024 (BUSINESSWIRE) -- Xos, Inc. (NASDAQ: XOS) ("Xos"), a leading electric truck manufacturer and fleet electrification services provider, and ElectraMeccanica, (NASDAQ: SOLO) ("ElectraMeccanica"), a designer and assembler of electric vehicles, today announced that they have entered into a definitive arrangement agreement, pursuant to which Xos will acquire all of the issued and outstanding common shares of ElectraMeccanica (the "ElectraMeccanica Shares") in an all-stock transaction. The members of the boards of directors of both companies unanimously approved the proposed transaction.
>
> The proposed transaction represents a unique opportunity for Xos to meet the growing demand for zero-emission medium-duty electric trucks by providing Xos with access to ElectraMeccanica's cash balance which is expected to be approximately $48.5 million at the time of the closing of the transaction. Xos is a leading manufacturer of medium-duty commercial electric vehicles for parcel delivery, uniform rental, food and beverage, and cash-in-transit fleets across the United States and Canada. Xos vehicles meet the duty cycles of traditional diesel vehicles while saving fleet operators money on their total cost of ownership, prompting many of the largest customers in the industry to adopt Xos vehicles, including: FedEx Ground, UPS, Penske, Cintas and Loomis.
>
> With over 600 units delivered to fleet customers since 2020, and approximately 12% GAAP gross margin in the third quarter of 2023, Xos has demonstrated its ability to profitably scale manufacturing of commercial electric vehicles in its Tennessee factory, capable of producing up to 5,000 vehicles per year at peak capacity.
>
> Xos' strong growth has been supported by regulations requiring the adoption of zero-emission electric vehicles beginning in 2024. Stackable U.S. federal and state incentives can provide customers with incentives equal to over 75% of the purchase price of a new Xos vehicle. Such incentives, combined with up to 80% reduction in energy costs and up to 40% reduction in scheduled maintenance costs versus diesel, mean that Xos' vehicles can accelerate total cost of ownership (TCO) savings compared with diesel alternatives to within 12 months of purchase. Xos' commitment to operational excellence, customer-focused vehicles, and efficient capital deployment is expected to be strengthened by ElectraMeccanica's strong cash position.

Dakota Semler, Chief Executive Officer and Chairman of Xos, said: "For seven years, Xos has designed and manufactured commercial electric vehicles that are relied upon by several of the world's largest and most recognizable commercial fleets. We are a leader in producing robust electric commercial vehicles and are delivering positive gross margins today. We believe leveraging ElectraMeccanica's assets will strengthen Xos' leadership position in the robust commercial truck market and allow Xos to scale profitable vehicle sales."

Liana Pogosyan, Chief Financial Officer of Xos, said: "We believe Xos' combination with ElectraMeccanica will significantly strengthen our cash position and provide significant growth funding and runway to execute our business plan. We believe that the cash provided in the transaction, combined with the reduced cash burn we have achieved as we have improved our margins, will provide runway to achieve our goals."

Susan Docherty, Chief Executive Officer of ElectraMeccanica, added, "In my last shareholder update, I stated that nothing was a higher priority than finding the right partner for us to create and re-accelerate shareholder value. We believe the proposed combination with Xos would achieve our management team's objective to generate revenues, achieve credible long-term profitability and improve shareholder value. Today, we couldn't be more pleased with the proposed combination with Xos, given its clear track record as an EV OEM with industry-leading gross margins; its proven ability to service demanding, large-fleet customers like FedEx Ground, UPS and Loomis; and its talented, disciplined management team. I encourage shareholders who are interested in learning more about Xos and this exciting opportunity ahead to visit our microsite at: www.xosandemv.com."

**Proposed Transaction Details**

The proposed transaction between Xos and ElectraMeccanica is the culmination of a formal process initiated by ElectraMeccanica's Board of Directors ("ElectraMeccanica Board") to explore a range of possible strategic alternatives for optimizing ElectraMeccanica's assets and generating sustained shareholder value while still managing potential risks. Since October 2023, the Strategic Committee of the ElectraMeccanica Board, with the assistance of its advisors and management, evaluated many former potential merger and acquisition candidates as well as new ones, including Xos. ElectraMeccanica's Strategic Committee, comprising Steven Sanders (Chairman), Mike Richardson (Vice Chairman), Dietmar Ostermann (Chair of the Strategic Committee), and Luisa Ingargiola (Independent Director) made a unanimous, formal recommendation to the ElectraMeccanica Board to pursue a combination with Xos and to proceed with the proposed transaction.

Dietmar Ostermann, the Chairman of ElectraMeccanica's Strategic Committee commented, "The Strategic Committee together with ElectraMeccanica's senior

management team has performed extensive due diligence on Xos and we have been tremendously impressed with their business, management team, their substantial growth prospects and their focus on profitability. Based on our diligence, which included discussions with key customers, we believe that Xos is well-positioned in the rapidly growing commercial electric vehicle market, and that, by leveraging ElectraMeccanica's balance sheet to accelerate Xos' growth and leadership position, the proposed transaction provides ElectraMeccanica's shareholders with the opportunity to participate in Xos' exciting future prospects."

Following the close of the transaction, ElectraMeccanica's shareholders will own approximately 21.0% of Xos, subject to certain adjustments as set forth in the definitive arrangement agreement. The transaction is intended to be completed, subject to the definitive arrangement agreement, by way of a court-approved plan of arrangement under the *Business Corporations Act* (British Columbia), whereby Xos will acquire all of the issued and outstanding ElectraMeccanica Shares in an all-stock transaction.

The board of directors of the combined company will consist of nine directors, comprising six directors designated by Xos, including Xos co-founders Dakota Semler and Giordano Sordoni (who also serves as Xos' Chief Operating Officer), and three directors designated by ElectraMeccanica. The management team of Xos will continue to manage the business of the combined company following the completion of the transaction.

The board of directors of each company approved the proposed transaction, which is expected to close in the first half of 2024, subject to the satisfaction or waiver of closing conditions, including, among others, required approvals of Xos' stockholders and ElectraMeccanica's shareholders, court approval of the transaction, certain third-party approvals and other customary closing conditions.

The proposed transaction requires approval by at least 66 2/3% of the votes cast by the holders of ElectraMeccanica Shares present in person or represented by proxy at a special meeting of ElectraMeccanica's shareholders to be called to consider the proposed transaction, as well as approval by Xos' shareholders.

All directors of each company have entered into support and voting agreements (subject to certain rights of withdrawal) for all of their shares which will also subject them to a 120-day restricted period. This cumulatively represents approximately 2.74 million ElectraMeccanica Shares (inclusive of restricted share units and deferred shares units), or approximately 2.2% of ElectraMeccanica's fully diluted outstanding shares, and approximately 3.23 million Xos Shares (inclusive of restricted stock units), or approximately 49.5% of Xos' fully diluted outstanding shares.

ElectraMeccanica has retained CBRE, Inc., to sub-lease its state-of-the-art 235,000-square-foot facility in Mesa, AZ.

**Advisors**

Greenhill & Co. Canada Ltd. is serving as financial advisor to ElectraMeccanica and also provided a fairness opinion to the ElectraMeccanica Board in connection with the proposed transaction. Snell & Wilmer L.L.P. and McCarthy Tétrault LLP are serving as legal counsel to ElectraMeccanica in connection with the proposed transaction.

Houlihan Lokey is serving as financial advisor to Xos. Cooley LLP and Osler, Hoskin & Harcourt LLP are serving as legal counsel to Xos in connection with the proposed transaction.

**The Materially Incomplete and Misleading Proxy Statement**

20. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on February 13, 2024. The Proxy Statement, which recommends that Xos stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Xos, ElectraMeccanica, and the combined company, and the financial analyses relied upon by the Board; (b) the Company's financial advisor(s); and (c) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Xos, ElectraMeccanica and the Combined Company, and the Financial Analyses Relied upon by the Board*

21. The Proxy Statement fails to disclose material information concerning the financial projections for Xos, ElectraMeccanica and the combined company, and any financial analyses relied upon by the Board in connection with its decision to enter into the Proposed Transaction.

22. For example, the Proxy Statement sets forth that at a November 29, 2023, special committee of the Board ("Special Committee") meeting, the "Special Committee reviewed

Xos' financial model and projections and directed management to continue discussions with ElectraMeccanica regarding Xos' financial model and projections." Proxy Statement at 63. Yet, the Proxy Statement fails to disclose a summary and quantification of Xos' financial model and projections. Moreover, the Proxy Statement fails to disclose any projections for Xos, ElectraMeccanica and/or the combined company, relied upon by the Board, the Special Committee or Xos management in connection with the Proposed Transaction, including the assumptions underlying the financial projections.

23. The Proxy Statement further fails to disclose a summary of any financial analyses related to the Proposed Transaction prepared by Company management or the Company's financial advisor including the "presentation about the financial characteristics of the proposed transaction" delivered by the Company's financial advisor at the January 10, 2024, Board meeting. *Id.* at 68. Indeed, the Board failed to secure a fairness opinion from its financial advisor in connection with the Proposed Transaction, but appears to have relied on the January 10, 2024, presentation prepared by the Company's financial advisor in connection with its decision to enter into the Arrangement Agreement. Xos stockholders must be provided with a summary of this information relied upon by the Board in connection with their decision whether to vote in favor of the Share Issuance and Proposed Transaction.

***Material Misrepresentations and/or Omissions Concerning the Company's Financial Advisor(s)***

24. The Proxy Statement fails to disclose material information concerning the Company's financial advisor(s).

25. Specifically, the January 11, 2024, press release announcing the Proposed Transaction sets forth that "Houlihan Lokey is serving as financial advisor to Xos." The Proxy Statement, however, fails to disclose any details regarding Houlihan Lokey's engagement,

including whether the Board or Special Committee formally engaged Houlihan Lokey in connection with the Proposed Transaction and the terms of Houlihan Lokey's engagement, including: (a) the details of the compensation Houlihan Lokey received, or expects to receive, in connection with the Proposed Transaction, including any amount that is contingent upon consummation of the Proposed Transaction; and (b) the details of any services Houlihan Lokey provided to the Company, ElectraMeccanica, or their respective affiliates in the prior two years, and any related compensation received by Houlihan Lokey. Moreover, the Proxy Statement fails to disclose whether Houlihan Lokey performed any financial analyses for the Special Committee or the Board in connection with the Proposed Transaction and if so, a summary thereof.

26.    Additionally, the Proxy Statement refers to "Xos' financial advisor" throughout the sale process. The Proxy Statement is materially misleading as it is unclear whether these references are to Houlihan Lokey, or an additional financial advisor assisting Xos in connection with the Proposed Transaction. To the extent Xos was being advised by an additional financial advisor, the Proxy Statement fails to disclose: (a) the identity of the additional financial advisor; (b) the Board's basis for engaging multiple financial advisors; and (c) the terms of the additional financial advisor's engagement, including the details of the compensation the financial advisor received, or expects to receive, in connection with the Proposed Transaction, including any amount that is contingent upon consummation of the Proposed Transaction and the details of any services the financial advisor provided to the Company, ElectraMeccanica, or their respective affiliates in the prior two years, and any related compensation received by the financial advisor.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

27. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

28. For example, the Proxy Statement sets forth that among the reasons considered by the Board in recommending Xos stockholders vote in favor of the Share Issuance and Proposed Transaction are "that the Arrangement would be accretive to current Xos share price" and "that the terms of the Arrangement were considered to be more favorable compared to the alternatives (including financings) that may have been available to Xos given market conditions." *Id.* at 71. The Proxy Statement, however, fails to disclose: (a) a quantification of the expected accretion to Xos' current share price; and (b) a summary of the alternatives to the Proposed Transaction that the Board and Company management were considering.

29. The Proxy Statement also fails to disclose whether the Board considered obtaining a fairness opinion in connection with the Proposed Transaction and, if so, the Board's basis for not obtaining one.

30. Additionally, the Proxy Statement fails to disclose: (a) whether the Special Committee was formed due to any potential conflicts of interest on the part of the Board; and (b) a summary of the powers provided to the Special Committee under its mandate or charter, including whether the Special Committee was provided full negotiating power, including the power to reject the Proposed Transaction.

31. The omission of the above-referenced information renders statements in the "Background to the Arrangement" and "Reasons Considered by the Xos Board; Recommendation of the Stock Issuance by the Xos Board" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

32. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Xos**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Xos is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants functioned as controlling persons of Xos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Xos and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

      B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

      D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.    Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 4, 2024               **LONG LAW, LLC**

                                          By: */s/ Brian D. Long*
                                                Brian D. Long (#4347)
                                                3828 Kennett Pike, Suite 208
                                                Wilmington, DE 19807
                                                Telephone: (302) 729-9100
                                                Email: BDLong@LongLawDE.com

                                                *Attorneys for Plaintiff*